IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CESAR GONZALEZ DE ARMAS | : | CIVIL ACTION |
| | : | No. 26-2683 |
| v. | : | |
| | : | |
| J.L. JAMISON, *Warden, FDC Philadelphia, in his official capacity*, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **August 18, 2026**

Petitioner Julio Cesar Gonzalez de Armas brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the U.S. Department of Homeland Security (DHS) after the U.S. Immigration and Customs Enforcement (ICE) detained him at a scheduled check-in. He is currently being held without bond under the Laken Riley Act (LRA), 8 U.S.C. § 1226(c)(1)(E), for a Pennsylvania summary retail theft matter resolved through a paper plea at a magisterial district court. Gonzalez de Armas contends the LRA does not apply because his magisterial district court plea is not a conviction under immigration law and does not qualify as an admission under the LRA. He argues that even if the LRA applies, mandatory detention as applied to him would violate procedural and substantive due process under the Constitution. He moves for a preliminary injunction while the petition remains pending. The Government opposes both his petition and motion, arguing the LRA applies. Because he has shown a strong likelihood of success on his claim, a clear right to relief, and continuing irreparable injury, and because the balance of equities and the public interest favor relief, the Court will grant his motion for preliminary injunction and order his release while the petition remains pending.

**BACKGROUND**[1]

Gonzalez de Armas is a 47-year-old native and citizen of Cuba. Second Am. Pet. ¶ 2, Dkt. No. 21. He fled Cuba with his wife and daughter "due to a fear of political persecution" and entered the United States through the southern border on November 1, 2022. *Id.* Shortly thereafter, DHS granted him parole under 8 U.S.C. § 1182(d)(5), and he lived with his family in Allentown, Pennsylvania. *Id.* ¶¶ 2, 26. He voluntarily enrolled in the Compliance Assistance Reporting Terminal program and has appeared in person for every required ICE check-in. Joint Stip. ¶¶ 4–5, Dkt. No. 47. He has pending applications for asylum and adjustment of status under the Cuban Adjustment Act, which he filed with his wife and eight-year-old daughter. *Id.* ¶ 6. His daughter became a lawful permanent resident in March 2025. *Id.* ¶ 10. He also has a Social Security number, work authorization, and a driver's license. *Id.* ¶¶ 7–8.

On April 21, 2026, Gonzalez de Armas appeared at the ICE Philadelphia Field Office for a scheduled check-in. ICE detained him there and initiated removal proceedings against him the same day, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *Id.* ¶¶ 11–12; Notice to Appear 4, Dkt. No. 10-1. He has since been detained at the Federal Detention Center in Philadelphia. Second Am. Pet. ¶ 3. The Government asserts ICE detained him pursuant to the LRA because he has a predicate retail theft conviction from 2025. Gov't's Resp. 4–5, Dkt.

---

[1] The Court draws the following facts from the Second Amended Petition, the Government's response, the Motion for Preliminary Injunction, the Government's opposition, the joint stipulated facts, all associated exhibits, and a preliminary injunction hearing held on July 22, 2026, at which Gonzalez de Armas presented three witnesses: Ashley Corvino, Brendan Lokka, and Dr. Jennifer Bulcock.

Corvino is the court manager for the magisterial district court where Gonzalez de Armas was summoned. Lokka is a public defender who previously handled summary trials and preliminary hearings at magisterial district courts in Pennsylvania. Dr. Bulcock is a licensed clinical social worker who evaluated and diagnosed Gonzalez de Armas with mental health disorders.

No. 25. The LRA, as codified in § 1226(c), provides: "The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). "The terms 'burglary', 'theft', 'larceny', 'shoplifting', 'assault of a law enforcement officer', and 'serious bodily injury' have the meanings given [to] such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2).

The disputed disposition stems from a citation issued in May 2025. On May 14, 2025, an Allentown police officer issued Gonzalez de Armas a nontraffic citation charging first-offense retail theft under 18 Pa. Cons. Stat. § 3929(a)(1), graded as a summary offense because the alleged value was less than $150. Non-Traffic Citation/Summons, Dkt. No. 21-3. The citation form, which was in English, stated:

> The Defendant took possession of, carried away, transferred, or caused to be carried away or transferred, merchandise, namely, ~LIST MERCHANDISE~ displayed, held, stored or offered for sale by a store or other retail mercantile establishments, namely, ~STORE NAME~, with the intention of depriving the merchants of the possession, use or benefit of such merchandise without paying the full retail value thereof, and the value of the merchandise was less than $150 in violation of Section 3929(a)(1) of the Pennsylvania Crimes Code[.]

*Id.* at 1. The citation form allowed a recipient to mark a "GUILTY" or "NOT GUILTY" line and return the form by mail or in person. *Id.* at 2. The line preceding the guilty and not-guilty field states: "I represent that I make this plea knowingly, voluntarily, and intelligently." *Id.* The form was not translated into Spanish. Gonzalez de Armas does not read or speak English. Second Am. Pet. ¶¶ 2, 38.

On May 27, 2025, he took this citation form and went to Magisterial District Court (MDC) 31-1-04 in Lehigh County with his uncle, Reynaldo Cespedes. Cespedes Decl. ¶ 5, Dkt. No. 21-8. Cespedes speaks English and Spanish but is not a certified interpreter. *Id.* ¶ 6. They remained in the public area and communicated through the clerk's counter behind protective glass. *Id.* ¶ 8. They did not enter a courtroom or interact with a judge. *Id.* Cespedes recalls translating only that Gonzalez de Armas would be placed on a payment plan. *Id.* ¶¶ 9–10. He heard no discussion of a guilty or not-guilty plea, did not translate any document, did not see whether Gonzalez de Armas signed a document, and did not translate any explanation of the charge, its elements, trial rights, or immigration consequences. *Id.* ¶¶ 11–14. The entire encounter lasted fifteen minutes. *Id.* ¶ 15.

The district court manager for MDC 31-1-04 confirmed the essential features of that process. Summary citations and plea instructions are mailed only in English. Corvino Decl. ¶ 2, Dkt. No. 21-5. According to the court manager, a person who brings the form to the clerk's window ordinarily does not see a judge. *Id.* ¶ 3. If the form reflects a guilty plea, no hearing occurs. *Id.* In May 2025, no Spanish-speaking clerk worked at MDC 31-1-04. *Id.* ¶ 8. The office has access to telephone interpretation, but the record does not show anyone offered or used that service with Gonzalez de Armas. *Id.* She confirmed that the court is not a court of record, provides no transcript, gives no advice or warnings about immigration consequences of a guilty plea, and does not appoint counsel for ordinary summary matters. *Id.* ¶¶ 9–11.

On June 3, 2025, the judge entered an order stating Gonzalez de Armas had been "convicted of or pled guilty" to retail theft.[2] Order Imposing J. 1, Dkt. No. 21-9. Gonzalez de

[2] The judge was away on vacation when Gonzalez de Armas and Cespedes went to the MDC on May 27, 2025. Corvino Decl. ¶ 6. He returned on June 2, 2025. *Id.*

Armas was not present. The judge imposed a $25 fine, $213.75 in costs, and no term of imprisonment. *Id.* Gonzalez de Armas later completed payment of the fine and costs.[3]

Based on the record and preliminary injunction hearing on July 22, 2026, the Court made the following findings for the purposes of the preliminary injunction analysis. Before detention, Gonzalez de Armas worked lawfully—driving for delivery services and serving as the paid caregiver for Cespedes—to support his wife and daughter. Second Am. Pet. ¶ 27. He repeatedly complied with ICE reporting requirements, and his pending applications for asylum and adjustment of status under the Cuban Adjustment Act give him substantial incentive to appear. The record contains no violent offense and no evidence that he has threatened any person.

The Court has considered the Government's sealed exhibit concerning a 2024 New Jersey shoplifting charge that ended in a conditional dismissal after satisfactory completion of the program. Gov't's Ex. A, Dkt. No. 45. The Government has not identified that matter as an independent statutory basis for the custody challenged here. The Court finds that the offense does not establish violence or outweigh Gonzalez de Armas's documented history of reporting and community ties for the purposes of the preliminary injunction.

The Court has also considered the psychological evidence. Dr. Bulcock, a licensed clinical social worker, diagnosed Gonzalez de Armas with post-traumatic stress disorder (PTSD) and provisionally with complex PTSD. Bulcock Evaluation 1, Dkt. No. 46-1. She found that Gonzalez

---

[3] The summary process differs materially from the guilty plea process used in the Lehigh County Court of Common Pleas for misdemeanors and felonies. Makoul Decl. ¶¶ 2–11, Dkt. No. 46-5. The Court of Common Pleas colloquy asks whether the accused understands English, knows the charge and its elements, understands the presumption of innocence and Pennsylvania's burden beyond a reasonable doubt, understands the rights to trial, confrontation, silence, and appeal, and understands that a guilty plea may affect immigration status. Guilty Plea Colloquy, Dkt. No. 46-5, at 3–12. According to the Lehigh County Chief Public Defender, magisterial district judges do not use that colloquy in summary cases. Makoul Decl. ¶ 11.

de Armas had "depression, anxiety, nightmares, intrusive thoughts, negative self-concept, difficulty maintaining relationships, and avoidance." *Id.* at 1. She concluded that detention's isolation and lack of environmental control exacerbate his symptoms. She recommended long-term trauma-focused therapy and explained that medication alone is insufficient. *Id.* at 1–10. The Government disputes the legal significance of these conditions but has not supplied competing clinical evidence. *See* Gov't's Opp'n 9–11, Dkt. No. 24.

**JURISDICTION**

Federal district courts have habeas jurisdiction over § 2241 petitions that raise statutory and constitutional challenges to detention. *Demore v. Kim*, 538 U.S. 510, 522–23 (2003); *see also INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

Section 1252(g) does not strip this Court of jurisdiction. Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Third Circuit has cautioned this bar "does not sweep broadly" and "reaches only these three specific actions, not everything that arises out of them." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion)); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Because Gonzalez de Armas is challenging the

legality of his present detention and not the commencement of removal proceedings against him, § 1252(g) does not bar his claims.

Nor does § 1252(b)(9) bar the Court's review. Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). It does not bar all claims touching removal. The Supreme Court has treated detention-related claims as potentially collateral rather than necessarily channeled to petitions for review. *Jennings*, 583 U.S. at 294–95. The Third Circuit has distinguished between detention-specific claims, which are "'wholly collateral' to the removal process," and detention claims that are "inextricably linked" to removal and must be channeled to petitions for review under § 1252(b)(9). *Khalil v. President, United States*, 164 F.4th 259, 273–75 (3d Cir. 2026). A detention-specific claim, according to *Khalil*, is one that raises "legal or factual questions" that do not "require deciding whether removing [the petitioner] would be unlawful." *Id.* at 274–76. Gonzalez de Armas's narrow claim here is that the Government lacks authority to detain him under the Government's asserted detention statutes. This is a claim about the legality of his detention, not a request to review the merits of a removal proceeding. *See Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) (finding a petitioner's challenge to the government's authority to detain him under a particular detention statute is not "'inextricably linked' to his removal proceedings"). Therefore, § 1252(b)(9) does not bar his claim.

**STANDARD**

A preliminary injunction requires the movant to show: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of harms

favors relief; and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first two factors, likelihood of success on the merits and irreparable harm, are "gateway factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If the gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

To demonstrate a likelihood of success on the merits, a movant "must show that 'there is a reasonable chance, or probability, of winning.'" *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 226 (3d Cir. 2026) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021)). This "requires a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. Because Gonzalez de Armas seeks an order compelling release, he must also show "that [his] 'right to relief is indisputably clear.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

**DISCUSSION**

Gonzalez de Armas has shown that the LRA likely does not apply to him and that he has a clear right to relief. The Government first contends the LRA applies to Gonzalez de Armas because the June 2025 summary disposition is a "conviction" under the Immigration and Nationality Act (INA). Gov't's Resp. 5–10; Gov't's Opp'n 4–8. The INA defines "conviction" as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where . . . (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A).

The words "formal judgment of guilt" do not make every state entry labeled a conviction conclusive for federal immigration purposes. *Avila v. Att'y Gen.*, 82 F.4th 250, 261 (3d Cir. 2023) ("We have long held that a state legislature cannot 'dictate how the term conviction is to be construed under federal law.'" (quoting *Acosta v. Ashcroft*, 341 F.3d 218, 223 (3d Cir. 2003))). Rather, whether a judgment counts as a conviction under the INA turns on what process actually supported the judgment. *Matter of S. Wong*, 28 I. & N. Dec. 518, 523 (BIA 2022) ("[W]e must examine the substance of the proceeding, not the label the State assigns to it."). A judgment qualifies as a conviction under § 1101(a)(48)(A) only when the proceeding provides "certain minimum constitutional protections, without which criminal penalties cannot constitutionally be imposed." *Id.* "These minimum protections include: proof beyond a reasonable doubt; and the rights to confront one's accuser, a speedy and public trial, notice of the accusations, compulsory process for obtaining witnesses in one's favor, and against being put in jeopardy twice for the same offense." *Id.* at 523–24. The absence of these protections "renders a proceeding noncriminal in nature and thus not a 'conviction' for immigration purposes." *Id.* at 525. *Wong* also recognized that the right to a jury and appointed counsel depend on the seriousness of the offense and the possibility of imprisonment and are, therefore, contingent rights. *Id.* at 524. Thus, the absence of appointed counsel or a jury does not resolve the inquiry. *Id.*

The Third Circuit adopted *Wong*'s minimum-constitutional-protections framework in *Avila*. The court held that the "test for determining what constitutes a 'conviction' under § 1101(a)(48)(A) is tethered to the procedural safeguards mandated by the U.S. Constitution." *Avila*, 82 F.4th at 261. An adjudication counts as a conviction only if "the individual was afforded the 'rights of criminal procedure guaranteed by the Constitution—as incorporated against the States by virtue of the Fourteenth Amendment.'" *Id.* at 259 (quoting *Wong*, 28 I. & N. Dec. at 524). The

Third Circuit upheld the New Jersey disorderly persons offense disposition before it because *Wong* had found that New Jersey disorderly persons proceedings carried the constitutionally required protections. *Id.* at 260–61.

*Avila* applied *Chevron* deference to adopt *Wong*'s interpretation of § 1101(a)(48)(A). The Supreme Court has since eliminated *Chevron* deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). *Avila*, however, remains binding Third Circuit precedent. *See id.* at 412 ("[W]e do not call into question prior cases that relied on the *Chevron* framework."). The Court also independently finds *Wong*'s focus on constitutional safeguards accords with § 1101(a)(48)(A) requirement of a formal judgment entered through a court process and the serious federal consequences Congress attached to a "conviction." *See id.* at 412 ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.").

The Government stresses that Pennsylvania classifies a summary offense as criminal, permits a not-guilty plea and bench trial before a magisterial district judge, and allows a de novo appeal to the Court of Common Pleas. Gov't's Resp. 8–10. Those features show that Pennsylvania provides a route to a conventional adjudication for a person who understands the citation and elects to contest it. They do not, however, establish that the judgment entered here followed such a route or that Gonzalez de Armas knowingly waived it.

A guilty plea is not merely a procedural choice; it is a waiver of the privilege against self-incrimination, the right to trial, and the right to confront adverse witnesses. *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969); *Class v. United States*, 583 U.S. 174, 182 (2018) ("[A] valid guilty plea forgoes not only a fair trial, but also other accompanying constitutional guarantees." (citation modified)). Due process therefore requires an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242; *Brady v. United States*, 397 U.S. 742, 748 (1970)

("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A form's printed conclusion that a plea is "knowing, voluntary, and intelligent" cannot substitute for evidence that the accused understood what the form meant. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976) ("A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." (citations omitted)); *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant pleads guilty to a crime without having been informed of the crime's elements, . . . the plea is invalid.").

The record here lacks any reliable indication that Gonzalez de Armas understood he was admitting legal guilt or surrendering adjudicatory rights. The form was in English. He does not read English. No judge addressed him. No qualified interpreter participated in the process. His uncle translated only a payment arrangement and heard no discussion of a plea. No one explained the elements of retail theft, the burden of proof, the right to require witnesses, the right to remain silent, or the right to a trial. No factual basis was placed on the record, and the court created no transcript. The judge entered judgment a week later, outside Gonzalez de Armas's presence, based on paperwork left in "a bin" for later review. *See* Corvino Decl. ¶ 7.

The record also shows the issuing authority accepted Gonzalez de Armas's paper plea without following Pennsylvania Rule of Criminal Procedure 409's mandatory procedure. When a citation does not specify the fine and costs, the defendant must appear before the issuing authority to enter the plea and receive sentence. Pa. R. Crim. P. 409(A)(2). The issuing authority then must

inquire of the defendant and determine that the plea was "voluntarily and understandingly entered." Pa. R. Crim. P. 409(C)(2). The citation contains fields labeled "FINE" and "COSTS," and both are blank. Non-Traffic Citation/Summons 1. Rule 409(A)(1)'s written-plea procedure therefore was unavailable because that procedure requires the defendant to forward the amount of the fine and costs specified in the citation. *See* Pa. R. Crim. P. 409(A)(1). Nor does Rule 409's Comment authorize the procedure used here. The Comment permits court staff to record an in-person delivery like a mailed plea only when the "defendant returns the written guilty plea and the fine and costs" under Rule 409(A)(1). Pa. R. Crim. P. 409 cmt.

Gonzalez de Armas never appeared before the magisterial district judge. Court staff instead accepted the form at the clerk's window without discussing the plea with him, and the judge imposed sentence one week later outside his presence. The issuing authority thus conducted none of the inquiry Rule 409(C)(2) requires. This state-law procedural defect does not by itself determine whether the disposition qualifies as a federal immigration conviction, but it reinforces the absence of any reliable mechanism showing that Gonzalez de Armas entered a knowing and voluntary plea.

The Government nonetheless relies on the "X" and signature appearing near "I plead guilty." Gov't's Resp. 7. But a signature on an untranslated form cannot alone prove a knowing waiver of constitutional rights. *See United States ex rel. Negron v. New York*, 434 F.2d 386, 389–91 (2d Cir. 1970) (recognizing that meaningful participation in a criminal proceeding requires comprehension). The point is not that every summary plea requires a Federal Rule of Criminal Procedure 11 colloquy. The point is that some reliable mechanism must establish comprehension and waiver before the disposition can serve as a conviction under immigration law. This record has none.

The Government also argues any defect in the process could have been corrected by a de novo appeal. An unexercised appellate right, however, does not establish a valid initial waiver, particularly when the accused was not told in a language he understood what he had done or what he needed to challenge. Under *Avila*, the Court asks whether the proceeding producing the judgment afforded the constitutionally required rights. A theoretical avenue to obtain those rights later does not convert an unknowing paper disposition into a reliable adjudication of guilt.[4]

This conclusion does not invalidate Pennsylvania's summary offense system. Pennsylvania may rationally process low-level offenses informally when it imposes only a fine and costs. Nor does the Court hold that no Pennsylvania summary offense judgment can qualify under the INA.

---

[4] The Government relies on the BIA's findings in *Wong* and an earlier decision, *Matter of Cuellar-Gomez*, 25 I. & N. Dec. 850 (BIA 2012), that New Jersey and Kansas's municipal court proceedings in the respective cases included all constitutionally required protections. Both municipal courts in *Wong* and *Cuellar-Gomez* provided far more constitutional safeguards than the MDC here. New Jersey's rules require a court to enter a not-guilty plea when a defendant refuses to plead or stands mute, permit suppression motions and discovery, and structure judicial plea proceedings unlike Pennsylvania MDCs. *Compare* N.J. Ct. R. 7:6-2(a)(1) (requiring the municipal court to determine that a "plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea and that there is a factual basis for the plea" before accepting it and to enter a not-guilty plea if "a defendant refuses to plead or stands mute"); *id.* 7:5-2 (authorizing the court to entertain a motion to suppress); *id.* 7:7-7 (authorizing pretrial discovery), *with* Pa. R. Crim. P. 407 cmt. ("When a defendant fails to sign the citation to indicate the plea, the issuing authority should record the unsigned citation as a guilty plea."); *id.* 454 ("A motion to suppress evidence shall be made in the first instance in the court of common pleas on appeal from a summary conviction."); *Commonwealth v. Lutes*, 793 A.2d 949, 960 (Pa. Super. Ct. 2002) (concluding that "[s]ince summary cases are not 'court cases,' pretrial discovery does not apply" to defendants charged with summary offenses) (citations omitted). The same is true of the Kansas municipal court. *See* Kan. Stat. Ann. § 12-4406(d) ("If the accused person refuses to plead, the court shall enter a plea of not guilty."); *id.* § 12-4408 (noting that municipal court can consider any motion consistent with the Kansas Rules of Criminal Procedure); *id.* § 12-4410 (authorizing pretrial discovery in municipal court cases). Pennsylvania MDCs, on the other hand, possess limited jurisdiction, do not create a record, and, in some cases, may record a paper response as a plea without any in-person judicial inquiry. More importantly, the specific process used here did not verify comprehension, waiver, or guilt. Neither *Wong* nor *Cuellar-Gomez* authorizes the Court to disregard those facts.

A summary offense conviction entered after a trial, or after a plea shown to be knowing and voluntary, presents a different case. The Court's narrow holding is that this judgment, entered through an untranslated paper process without the judicial inquiry required by Pennsylvania law or any other reliable record establishing comprehension and waiver, likely does not constitute a "conviction" under § 1101(a)(48)(A).[5]

The Government alternatively invokes the LRA's "admits having committed" or "admits committing acts which constitute the essential elements" of theft as a basis for mandatory detention.[6] 8 U.S.C. § 1226(c)(1)(E)(ii). The alternatives Congress listed are distinct: a charge, arrest, conviction, admission of the offense, or admission of acts constituting its elements. *Id.* Courts must give each term independent meaning. *See Campos-Chaves v. Garland*, 602 U.S. 447,

---

5 The Court does not vacate, invalidate, or otherwise disturb the Pennsylvania judgment. *See Drakes v. I.N.S.*, 330 F.3d 600, 604-06 (3d Cir. 2003) (finding that a noncitizen could not challenge the constitutionality of state convictions that provided basis for removal by petition for federal habeas relief). It decides only whether it falls within Congress's federal definition of "conviction" in § 1101(a)(48)(A).

6 In its response to the Second Amended Petition, the Government states Gonzalez de Armas was "charged with, and later convicted" of retail theft but does not argue that the LRA's "charge" basis applies here and did not make that argument at the evidentiary hearing. *See* Gov't's Resp. 6. To the extent that the Government invokes that basis to justify Mr. Gonzalez de Armas's detention, the May 2025 citation does not independently require Gonzalez de Armas's detention under the LRA's "is charged with" clause. Pennsylvania law treats the issuance of a citation as one way of instituting a criminal proceeding in a summary case. Pa. R. Crim. P. 400(1), 405. The May 14, 2025 citation therefore charged Gonzalez de Armas with retail theft. But that charge did not remain pending. On June 3, 2025, the magisterial district judge entered judgment and imposed sentence. Gonzalez de Armas later completed payment of the fine and costs. By the time ICE detained him on April 21, 2026, the state proceeding had ended in a judgment, and no retail theft charge remained. Congress's use of present tense in the LRA matters. *See Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 52 (2025) ("To ascertain a statute's temporal reach, this Court has frequently looked to Congress's choice of verb tense." (citation modified)); *United States v. Atiyeh*, 402 F.3d 354, 364 (3d Cir. 2005) ("Congress [knows] how to use the past tense."). Congress could have required detention of a noncitizen who "was charged with" theft. It instead required detention of a noncitizen "who is charged" with theft. Because Gonzalez de Armas is no longer charged with theft, the LRA's "charged with" basis does not apply.

457 (2024) ("The word 'or' is almost always disjunctive and generally used to 'indicate an . . . alternative.'" (citation modified)).

Immigration law has long required more than a label before a noncitizen may be treated as having admitted a crime. *See Matter of K-*, 7 I. & N. Dec. 594 (BIA 1957). A "valid admission of a crime for immigration purposes requires that the alien be given an adequate definition of the crime, including all essential elements, and that it be explained in understandable terms." *Id.* at 597. The person must then voluntarily and unequivocally admit facts establishing each element. *See id.*; *Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1215–16 (9th Cir. 2002) ("BIA case law has established three requirements which must be met for an admission to qualify as having been validly obtained. First, the admitted conduct must constitute the essential elements of a crime in the jurisdiction where it occurred. Second, the applicant for admission must have been provided with the definition and essential elements of the crime prior to his admission. Third, his admission must have been voluntary."). Congress used materially the same "admits" and "essential elements" language in the LRA. It is therefore reasonable to presume Congress legislated against this backdrop of this longstanding agency interpretation of materially similar language. *See George v. McDonough*, 596 U.S. 740, 746 (2022) ("Where Congress employs a term of art obviously transplanted from another source, it brings the old soil with it." (citation modified)).

No such admission occurred. Gonzalez de Armas never described the alleged incident, acknowledged taking merchandise, admitted an intent to deprive the merchant, or agreed that the citation's allegations were true. No one explained the elements to him in Spanish. Neither the clerk nor the judge questioned him. The only translated communication concerned a payment plan. The

record contains no words by Gonzalez de Armas that establish any element of retail theft under Pennsylvania law.[7]

The Government finally points to Gonzalez de Armas's completion of payments and failure to dispute the allegations in the citation as evidence of his admission. This evidence, however, fails to convert his paper plea into a factual admission. Completion of payments shows compliance with a court order, not an admission of mens rea. Failing to dispute the allegations in his habeas pleadings is not sworn testimony and cannot supply the required element-by-element admission. Furthermore, silence is an especially weak basis where the Government bears the burden to justify custody. *See Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 330 (3d Cir. 2021) ("[T]he Government must establish merely that there is 'reason to believe' a detainee is properly included within § 1226(c)."). The LRA's admission clause therefore likely does not apply. Because the Court finds that the LRA likely does not apply, it need not decide the due process claim.[8]

---

[7] Moreover, a plea and a factual admission are not always the same. A defendant may plead nolo contendere and accept judgment without admitting guilt. *United States v. Poellnitz*, 372 F.3d 562, 565–70 (3d Cir. 2004) ("While a nolo plea is indisputably tantamount to a conviction, it is not necessarily tantamount to an admission of factual guilt."); *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016). A defendant may also enter an *Alford* plea while maintaining innocence. *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) ("Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty."). Pennsylvania likewise has declined to treat a guilty plea to a summary citation as proof in later proceedings. *Hurtt v. Stirone*, 206 A.2d 624, 627 (Pa. 1965) (recognizing "a valid distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lesser misdemeanors, and matters of like import" because, in such cases, "expediency and convenience, rather than guilt, often control the defendant's 'trial technique'" and "it would be unreasonable and unrealistic to say [the defendant] waived that right as to a matter (civil liability)"); *Folino v. Young*, 568 A.2d 171, 173 (Pa. 1990) (affirming *Hurtt*'s reasoning). While those authorities do not control the LRA, they reinforce the distinction between accepting a disposition and admitting historical facts.

[8] Courts should not construe an immigration detention statute to create serious constitutional problems when a reasonable alternative exists. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("It is a cardinal principle of statutory interpretation, however, that when an Act of Congress raises a serious doubt as to its constitutionality, this Court will first ascertain whether a construction of the

The Government has also invoked 8 U.S.C. § 1225(b)(2)(A), which addresses detention of an "applicant for admission" during proceedings under § 1229a. The Government contends Gonzalez de Armas, as an "applicant for admission," remains "seeking admission" until he is formally admitted or his removal proceedings conclude and is therefore subject to mandatory detention under § 1225(b)(2)(A). Gov't's Resp. 19–21. This Court and many others in this District have already resolved this issue against the Government.

In *Ndiaye v. Jamison*, this Court held that "§ 1226 applies to noncitizens . . . who have been residing in the country, while § 1225 is reserved for newly arriving noncitizens." No. 25-6007, 2025 WL 3229307, at *8 (E.D. Pa. Nov. 19, 2025). Judges in this District have consistently reached the same conclusion. *See, e.g.*, *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Rodrigues v. Jamison*, No. 26-1407, 2026 WL 676468 (E.D. Pa. Mar. 10, 2026).[9]

---

statute is fairly possible by which the question may be avoided." (citation modified)). Reading § 1226(c)(1)(E) to require a constitutionally reliable conviction or a knowing factual admission avoids turning untranslated citation paperwork into [an automatic command of incarceration. That reading preserves Congress's objective while respecting the basic rule that physical detention requires dependable process.

[9] Appellate courts have now split on the issue. Rejecting the overwhelming weight of authority from district courts around the country, divided panels of the Fifth and Eighth Circuits have agreed with the Government's position, holding that an "applicant for admission" is "seeking admission" so long as he is "'present in the United States [and] has not been admitted,' . . . regardless of whether he takes 'any further affirmative steps to gain admittance.'" *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026) (alteration in original) (citations omitted); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). The First, Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits, in contrast, have "join[ed] the overwhelming majority of federal judges across the Nation" in holding that § 1225(b)(2)(A) "does not apply to . . . noncitizens[] who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Guerrero Orellana v. Moniz*, __ F.4th __, 2026 WL 2352042, at *11 (1st Cir. Aug. 13, 2026) (holding that "noncitizens . . . who are present in the

This Court will adhere to its prior decisions holding that "§ 1226 applies to noncitizens like [Gonzalez de Armas] who have been residing in this country, while § 1225 is reserved for newly arriving noncitizens." *Ndiaye*, 2025 WL 3229307, at *8. Gonzalez de Armas's present detention did not occur at or near the border or during an ongoing inspection process. He entered the United States in 2022, lived here for over three years, and was detained by ICE in the interior in April 2026. Section 1225(b)(2)(A) therefore does not apply to him.

Having determined that Gonzalez de Armas has shown a reasonable chance of winning on the merits, the Court turns to the second gateway factor: irreparable harm. Irreparable harm is "harm that is not 'speculative'" and "cannot adequately be compensated after the fact by monetary damages." *Johnson & Johnson v. Samsung Bioepis Co.*, 173 F.4th 454, 460 (3d Cir. 2026) (citations omitted). Loss of physical liberty for even a short period is irreparable. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690.

Money damages cannot restore months spent in custody, repair missed family life, or undo deterioration caused by confinement. Gonzalez de Armas's injury is continuing each day the

---

United States without admission are not subject to § 1225(b)(2)(A)'s mandatory detention provision"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–34 (6th Cir. 2026) (holding § 1225(b)(2)(A) does not apply to long-resident noncitizens arrested in the interior); *Cirrus Rojas v. Olson*, __ F.4th __, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026) ("join[ing] the majority of circuits that have confronted th[e] question" and rejecting the government's argument that a noncitizen who is deemed an "applicant for admission" must also be "seeking admission"); *Rodriguez Vazquez v. Bostock*, __ F.4th __, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) ("[W]e conclude that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026) (concluding "§ 1225(b)(2)(A) is limited to the border, and that [petitioner] is an 'applicant for admission' but not 'seeking admission'"); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1276 (11th Cir. 2026) (holding § 1225(b)(2)(A) "applies only to . . . those seeking lawful entry into the United States," not "present aliens not seeking admission"). The Third Circuit has not yet addressed the issue presented in this case but heard oral argument in a pair of consolidated cases presenting the issue on May 11, 2026. *See* Gov't's Resp. 20 n.2.

Government holds him. The clinical record independently strengthens that conclusion. His PTSD symptoms have worsened in detention, and Dr. Bulcock has explained that specialized trauma therapy and a stable family environment are important to treatment. The Federal Detention Center provides medication but not the recommended sustained trauma-focused therapy. Continued separation also deprives his daughter and disabled uncle of his care. These are concrete and ongoing harms that are not remediable after final judgment.

With the gateway factors satisfied, the remaining two factors favor relief. The balance of equities favors Gonzalez de Armas. Release does not prevent enforcement of immigration laws. The Government may continue removal proceedings, require reporting, and seek modification of an injunction if new facts establish lawful detention. Furthermore, the Government has not shown Gonzalez de Armas is dangerous. The alleged underlying offense and the 2024 New Jersey matter are nonviolent. He appeared at every required ICE check-in. His family, employment history, fixed residence, and pending applications show he is not a flight risk. In contrast, denying relief would continue a serious deprivation of liberty and aggravation of Gonzalez de Armas's mental health injuries.

The public also has no interest in detention beyond the authority Congress granted. *See Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 883–84 (3d Cir. 1997) ("In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights."). It has a strong interest in faithful enforcement of Acts of Congress, which includes respecting statutory limits and constitutional safeguards. *See Nken v. Holder*, 556 U.S. 418, 436 (2009). Relief for Gonzalez de Armas here advances both interests. The Court will therefore grant his motion for preliminary injunction.

**CONCLUSION**

Because Gonzalez de Armas has shown a strong likelihood of success on his claim, a clear right to relief, and continuing irreparable injury, and because the balance of equities and the public interest favor relief, the Court grants his motion for preliminary injunction. The Court will order his release while the petition remains pending. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (concluding that the "typical remedy" for "unlawful executive detention" is release).

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.